

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00343-CR

_____

JORGE LUIS RICO JR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 297th District Court
Tarrant County, Texas
Trial Court No. 1664848

---

Before Birdwell, Bassel, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant Jorge Luis Rico Jr. appeals from a judgment adjudicating him guilty of burglary of a habitation. *See* Tex. Penal Code Ann. § 30.02(c)(2). In one point, Rico challenges the sufficiency of the evidence supporting the trial court's finding that he had violated his community-supervision conditions. We will affirm.

### II. BACKGROUND

In August 2021, Rico pled guilty to one count of burglary of a habitation and was placed on deferred-adjudication community supervision for two years. The trial court also issued a no contact order with the victim, assessed a $100 fine, and determined the conditions of Rico's community supervision. In July 2022, the trial court updated Rico's terms and conditions of community supervision to require that Rico participate in and complete a mental-health screening. Rico signed his acknowledgement of the terms and conditions of his community supervision on both occasions.

On August 2, 2022, the State filed a Petition to Proceed to Adjudication, alleging Rico violated three terms and conditions of his community supervision, including testing positive for both methamphetamine and morphine in June 2022. The State ultimately moved to dismiss that petition. The trial court granted the State's petition to dismiss, extending the term of Rico's community supervision by one year and modifying the terms and conditions to include the completion of treatment in a Substance Abuse

Felony Punishment Facility (SAFPF) for not more than one year. Rico's SAFPF placement began in October 2022.

Marquetta Westmoreland was Rico's SAFPF coordinator during his placement. Westmoreland visited with Rico more than once, and during the first visit in January 2023, Rico raised a concern about the length of his SAFPF program. He told Westmoreland that he had only agreed to a six-month program, and instead he was enrolled in a nine-month program. Westmoreland twice explained that Rico was placed in the nine-month program due to his diagnosed mental-health issue. When Rico repeated the same concerns at a subsequent meeting in April 2023, he was agitated and belligerent.

The meeting in April 2023 was a staffing treatment team meeting that was conducted over the phone. According to Westmoreland, the meeting was designed to gauge Rico's progress in the SAFPF program. Westmoreland, Rico, and a transition coordinator participated in the phone conference. Rico refused to answer any treatment progress questions and had no plan to prevent a relapse. Instead, Rico told Westmoreland that, "if he wanted to use drugs once he got off probation, it would be no big deal." Because Westmoreland had received a judge's report that Rico was making average progress, his response confused her. When Westmoreland attempted to end the call to follow up with Rico's primary counselor, Rico yelled that he was not going to stay in the program and threatened to murder her and her family if she tried to keep him there. Rico then also threatened to kill the transition coordinator.

Following these threats, Rico was placed in segregation and was later unsuccessfully discharged from SAFPF on June 21, 2023.

Two days after he was discharged, the State filed a Second Petition to Proceed to Adjudication, alleging that Rico had violated the terms and conditions of his community supervision by failing to successfully complete the SAFPF program. The trial court conducted an adjudication hearing on the State's motion on December 18, 2023. During the hearing, Westmoreland testified about the interactions she had with Rico while he was in SAFPF, including the phone call during which Rico threatened to murder her and the transition coordinator if he was forced to stay in the SAFPF program longer than six months.

Rico also testified during the hearing. He indicated that he never intended to threaten Westmoreland or the transition coordinator, but that he was mumbling under his breath while angry and may have said some things that were "taken the wrong way."

The trial court found the allegation in the State's second adjudication petition true and adjudicated Rico guilty of the offense of burglary of a habitation. The trial court sentenced Rico to twenty years' confinement.

## III. DISCUSSION

We review an order to proceed to adjudication in the same manner as a decision to revoke regular community supervision. *Powe v. State*, 436 S.W.3d 91, 93 (Tex. App.—Fort Worth 2014, pet. ref'd). We review a trial court's decision to revoke community supervision and adjudicate guilt for an abuse of discretion. *Id.* In an adjudication

4

proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

If the State fails to meet its burden of proof, the trial court abuses its discretion by adjudicating the defendant guilty and revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94. If the State meets its burden of proof, the trial court's finding of a single violation of a condition of community supervision is sufficient to support adjudication. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012); *Leach v. State*, 170 S.W.3d 669, 672 (Tex. App.—Fort Worth 2005, pet. ref'd) ("Proof by a preponderance of the evidence of any one of the alleged violations of the conditions of community supervision is sufficient to support a revocation order.").

Due process is implicated in the revocation of any community supervision because it involves the loss of liberty. *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980). It would offend due process if a defendant were discharged from his therapy program for a wholly inappropriate reason, and that reason was then used as a basis to revoke the defendant's community supervision. *Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012) (op. on reh'g). If a defendant's compliance with the

terms of his community supervision is dependent on the discretion of a third party, we must also examine the third party's use of its discretion to confirm that the discharge was for a reason connected to the purpose of the defendant's community supervision. *Id.*

On appeal, Rico claims the evidence was insufficient to revoke his community supervision. Rico's argument focuses on two alleged deficiencies in the record: (1) that the evidence was not sufficient to establish he knew what his community-supervision obligations were and (2) that he was wrongfully discharged from the SAFPF program because he never intended to harm anyone. We address each in turn.

First, Rico claims that the record fails to establish that he knew he was required to successfully complete SAFPF as part of the terms and conditions of his community supervision. Rico points to a statement made during the hearing by Westmoreland— that she "believed" Rico knew he was required to complete SAFPF—and argues that statement was not enough to prove that he was aware of the SAFPF requirement. Though Westmoreland did make that statement, Rico's argument largely ignores the rest of the evidence in the appellate record.

The clerk's record contains a copy of the Supplement/Amendment to Conditions of Community Supervision signed by Rico on September 2, 2022. *See Cobb v. State*, 851 S.W.2d 871, 873–74 (Tex. Crim. App. 1993) (requiring only that a copy of a deferred-adjudication judgment and community-supervision conditions be included in the appellate record). This document was not contested at the hearing, and in fact,

6

Rico admitted that he knew he was expected to complete the SAFPF program. Rico's primary dispute appeared to be how long the program would last; he testified that he only agreed to six months of SAFPF but was later told he was part of a nine-month program. Twice after Rico raised these concerns, Westmoreland explained that Rico was in the nine-month program due to a mental-health diagnosis.

This initial misapprehension about the *duration* of Rico's SAFPF program does not tend to show that he did not know that he needed to successfully complete the program, and in fact it indicates the opposite—that he did know he needed to complete the program. The trial court is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Hacker*, 389 S.W.3d at 865. Here, with the signed conditions of community supervision and the testimony given at the hearing, the trial court could have reasonably determined that Rico was aware of the probation condition which required him to successfully complete the SAFPF program.

Second, Westmoreland testified that Rico threatened to murder her and her family, as well as the transition coordinator. During his testimony, Rico admitted that he became angry on the April 2023 phone call and mumbled things that may have been "taken the wrong way." Rico acknowledged that one of the statements he made was, "When you least expect it, someone can come up behind you."

Rico was in SAFPF following a positive drug test while on community supervision. This history suggests that part of the purpose of his community supervision was to address the use of illegal substances. Further, the testimony at trial

showed that Rico was unsuccessfully discharged from the SAFPF program because he (1) did not have a relapse plan, (2) did not fully participate in the program, and (3) made death threats to Westmoreland and the transition coordinator in an attempt to secure his release from the program after six months instead of nine. All of the evidence indicates that Rico's discharge was directly related to his participation in—and violation of—the SAFPF treatment program requirements; thus, Rico's discharge from SAFPF does not offend notions of due process. *See Teal v. State*, No. 02-21-00060-CR, 2022 WL 2176515, at *11 (Tex. App.—Fort Worth June 16, 2022, no pet.) (mem. op., not designated for publication) (citing *Leonard*, 385 S.W.3d at 577) (stating that a reviewing court must examine a third party's use of discretion when it comes to a defendant's compliance with community supervision conditions to ensure the decision had a rational basis and was connected to the purpose of community supervision).

The evidence presented supports the conclusion that the trial court's revocation of Rico's community supervision was based on the determination that he did not successfully complete the SAFPF program—as required under the modified terms and conditions of his community supervision.

Because the evidence was sufficient to support the trial court's finding that Rico violated his community-supervision conditions, the trial court did not abuse its discretion by revoking Rico's community supervision and adjudicating him guilty.

## IV. MODIFICATION OF JUDGMENT

Although Rico's complaint on appeal does not address any error in the judgment, the record reveals a clerical error that requires modification.

The reporter's record reflects that the adjudication hearing was the result of the "State's Second Petition to Proceed to Adjudication" (Second Petition), not the "Original Motion" as recorded in the judgment. There is no record of an "Original Motion" being filed by the State in this case—instead, the "State's Petition to Proceed to Adjudication" (First Petition) was filed in August 2022. The First Petition was dismissed on a motion from the State. The reporter's record makes it clear that the adjudication hearing, which resulted in the judgment in this case, considered the allegations in the Second Petition.

Because an appellate court has the authority to modify a judgment to accurately reflect the record, we modify the judgment here to reflect that Rico's adjudication was based on the trial court's findings under the Second Petition rather than the nonexistent "Original Motion" recorded in the judgment. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Cain v. State*, 621 S.W.3d 75, 87–88 (Tex. App.—Fort Worth 2021, pet. ref'd) (modifying judgment sua sponte to reflect accurate statute for offense when judgment erroneously listed another statute).

9

## V. CONCLUSION

Having overruled Rico's sole point on appeal, we modify the judgment to accurately reflect the reason for adjudication, and we affirm the trial court's judgment as modified. Tex. R. App. P. 43.2(b).

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 12, 2024

10